UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN WILSON,

          Petitioner,

v.                                    Case No. 07-cv-11420
                                    Honorable Arthur J. Tarnow

SHERRY BURT,

          Respondent.
_____/

**OPINION AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
ISSUING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED ON
APPEAL *IN FORMA PAUPERIS***

**I. INTRODUCTION**

Petitioner Steven Wilson, a state inmate currently confined at the St. Louis Correctional Facility in St. Louis, Michigan,[1] filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On January 19, 2005, Petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529, and felony firearm, MICH. COMP. LAWS § 750.227(b)(a), by a Wayne County, Michigan, circuit court jury. On March 1. 2005, he was sentenced to six to twenty years in prison for the armed-robbery conviction and the mandatory two years in prison for the felony-firearm conviction. In his *pro se* pleadings, Petitioner alleges the following: (1) ineffective

---

[1] Petitioner was incarcerated at the Southern Michigan Correctional Facility when he originally filed his petition for writ of habeas corpus; however, he has since been transferred to the St. Louis Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is denying the petition in this case, it finds no reason to do so.

assistance of counsel and (2) improper sentencing. For the reasons stated, the Court will deny the petition. The Court will issue Petitioner a certificate of appealability and an application to proceed on appeal *in forma pauperis*.

## II. BACKGROUND

Petitioner was charged with the armed robbery of Lorenzie Williams and James Bivins. The robbery occurred on July 21, 2004, in Detroit, Michigan.

At the preliminary examination hearing on September 20, 2004, Williams testified that, on the day in question, while he was seated in the front passenger seat of Bivins's vehicle and Bivins was seated in the driver's seat, they were approached by two male pedestrians. At the time, Bivins's car was parked in a parking lot. At that hearing, Williams identified Petitioner as one of the men that approached them on that day.

According to Williams, Petitioner pointed a pistol through the passenger-side window and said, "[g]ive me your money, stick up," demanding money from him and Bivins. (Preliminary Hr'g Tr. 8, Sept. 20, 2004.) Both denied having any money. Williams testified that Petitioner then reached into his (Williams's) pocket and took twenty-seven dollars, while the other man, who was unarmed, reached into Bivins's pocket and took a pack of cigarettes. He said that both men then ran from the scene.

Williams further testified that, the next day, he filed a police report. Williams also said that, on July 28, 2004, he viewed a number of photographs at the police station; he identified Petitioner as one of the perpetrators. He said that he had seen Petitioner in the neighborhood on various occasions.

Petitioner was charged with two counts of armed robbery and felony firearm.

On the day of trial, however, the People dismissed the second count of armed robbery. Petitioner was offered a plea agreement, which included a minimum sentence of three and one half years in prison, if he pleaded guilty to armed robbery. However, Petitioner rejected the plea agreement. The following colloquy took place between Petitioner and the trial judge:

> THE COURT: All right. Mr Wilson, sir? You've heard everything your attorney has placed on the record this morning?
> MR. WILSON: Yes.
> THE COURT: Do you understand you have an absolute Constitutional Right to a trial by jury in this matter. Do you understand that?
> MR. WILSON: Yes.
> THE COURT: And do you understand that your counsel has spoken with the counsel for the People, and that they have re-worked your guidelines and there is a, a plea that you could avail yourself of in this matter if you choose to do so. Do you understand that?
> MR. WILSON: Yes.
> THE COURT: All right. And do you understand that [by] pleading, of course, that's – you got a bird in the hand, right?
> MR. WILSON: Yes.
> THE COURT: And if you go to trial you – there could be a not guilty, guilty or who knows what. Do you understand that?
> MR. WILSON: (Nodding yes)
> THE COURT: All right. So, what is it you want to do under those circumstances?
> MR. WILSON: I'm going to take it to trial.

(Trial Tr. 6-7, Jan. 18, 2005.)

At trial, Williams testified to the events that occurred on July 21, 2004, as he did at the preliminary-examination hearing. The following additional testimony was presented:

On July 23, 2004, Williams testified that he was in the same neighborhood with his brother when he saw the person (Petitioner) he believed to have committed the robbery; he asked his brother to call 911. Subsequently, police officers were dispatched to the location where Williams's brother made the emergency call regarding the sighting of a man who had robbed his brother just days before.

3

Arriving approximately two minutes after the call, the officers observed Petitioner, who fit the description that had been provided.  As one of the officers was speaking with Petitioner, Williams approached them and identified Petitioner as the individual who robbed him two days earlier.  Petitioner became upset and attempted to assault Williams. As the officer attempted to grab Petitioner, Petitioner ran.

Williams informed the officers that he had seen Petitioner several times in the neighborhood before the robbery.  When the police conducted a photographic line-up, Williams selected Petitioner's photo from an array of six others.  Testimony also established that Petitioner's address was no more than a block away from the robbery location.

Detroit Police Officer Ryan Foster's testimony corroborated Williams's testimony.

Petitioner did not present any evidence.

Following the two-day trial, the jury found Petitioner guilty of the above-stated charges.

Subsequent to his sentencing, Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I.  [Petitioner] was denied a fair trial and the effective assistance of counsel by his attorney's failure to request the appointment of an expert on eyewitness identification.

II. [Petitioner's] constitutional right to due process of law was violated when the trial judge imposed a minimum sentence of six years imprisonment, which penalized [Petitioner] for exercising his right to a jury trial after the court had offered [him] a minimum sentence of [three and one half years] in exchange for a guilty.

On May 9, 2006, the Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Wilson*, No. 261371, 2006 WL 1235228 (Mich.Ct.App. May 9, 2006).

Petitioner then filed an application for leave to appeal that decision in the Michigan Supreme Court, raising the same claims as raised in the Court of Appeals. On October 31, 2006, the Michigan Supreme Court denied the application "because we are not persuaded that the questions presented should be reviewed by this Court." *People v. Wilson*, 477 Mich. 914, 722 N.W.2d 863 (2006).

Petitioner filed this habeas petition on April 2, 2007, raising the same claims as raised in both state-appellate courts.

### III.  STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state-court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal-habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

Petitioner must therefore demonstrate that the state appellate court's decision was contrary to or involved an unreasonable application of existing federal law.

## IV. DISCUSSION

### A. Ineffective Assistance of Trial Counsel Claim

In his first habeas claim, Petitioner alleges that trial counsel was ineffective for failing to request the appointment of an expert on eyewitness identification. Because Petitioner failed to develop any record in the Michigan courts to support that claim, the Michigan Court of Appeals' review was limited to errors apparent on the record. In addressing the claim, the Court of Appeals stated:

> Defendant argues that trial counsel was ineffective because he failed to call an expert witness to testify about the inherent weaknesses of eyewitness testimony.
>
> Because defendant did not raise this issue in a motion for a new trial or evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436; 212 NW2d 922 (1973), this Court's review is limited to errors apparent on the record. *People v. Williams*, 223 Mich.App 409, 414; 566 NW2d 649 (1997). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v. LeBlanc*, 465 Mich. 575, 579; 640 NW2d 246 (2002). To establish ineffective assistance of counsel, a defendant must show "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.*, p 578 (citations and internal quotation marks omitted). Defendant must also demonstrate that counsel's deficient performance "was so prejudicial to him that he was denied a fair trial." *People v. Toma*, 462 Mich. 281, 302; 613 NW2d 694 (2000). He must

> demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . . " *Id.*, pp 302-303 (citations and internal quotation marks omitted).
>
> Defendant has failed to establish support for his claim of ineffective assistance of counsel. *See People v. Ackerman*, 257 Mich.App 434, 455; 669 NW2d 818 (2003). Defendant's brief includes citations and discussions of treatises and studies concerning the weaknesses of eyewitness testimony in general. But this review of authorities is inadequate to establish that defense counsel was ineffective. Defendant has not provided an affidavit from a proposed expert applying these general principles to the circumstances of this case. Although defendant asks this Court to surmise that expert testimony would have been beneficial to his case, it is not apparent that general weaknesses in eyewitness testimony are relevant here, where the witness testified that he was familiar with defendant from having seen him several times previously. Further, it is unlikely that the evidence would have affected the verdict. Therefore, we reject this claim of error.

*Wilson*, No. 261371, 2006 WL 1235228, at * 1.

To establish ineffective assistance of counsel under Federal constitutional standards, Petitioner must demonstrate that (1) counsel's performance fell below the objective standard of reasonableness and so prejudiced Petitioner that he was denied a fair trial and (2) a reasonable probability exists that, but for counsel's conduct, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must

7

overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Decisions regarding which witnesses to call, and whether to present an expert witness, are therefore matters of trial strategy. Petitioner bears the burden of overcoming the presumption that counsel's action might have been sound trial strategy. *Id.* at 689. Moreover, the Sixth Circuit has held on previous occasions that the failure of counsel to hire an expert in eyewitness identification did not prejudice the defendant in a criminal trial. *Dorch v. Smith*, 105 Fed. App'x 650, 653 (6th Cir. 2004).

In the present case, Petitioner's argument consists of mere speculation and conjecture, as opposed to tangible proof or documentation from an eyewitness-testimony expert familiar with the facts of this case. That is, although Petitioner recites numerous treatises and publications in support of his general contention that eyewitness testimony is inherently unreliable, Petitioner fails to demonstrate that expert testimony in this case would have made any difference. As the Michigan Court of Appeals noted, Petitioner never provided an affidavit from a proposed expert applying the concerns addressed in the treatises and studies to the circumstances of this case. Nor did Petitioner ever request a new trial, or even a *Ginther*[2] hearing.

Although Petitioner asks this Court to surmise that expert testimony would have made the difference in his case, he provides this Court with no basis to do so. Petitioner cannot satisfy the two elements of the *Strickland* test. Williams's trial testimony supports his assertion that he

---

[2]*People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973).

was certain that Petitioner was the person who robbed him. Not only did Williams see Petitioner in the area on various occasions, he saw Petitioner face-to-face when Petitioner pointed a gun at him on the day in question.

This case therefore does not present the typical sort of eyewitness identification that has been subject to reliability challenges, because here, the victim had observed Petitioner on several other occasions prior to the date of the offense. Any theoretical weaknesses that may attend eyewitness identification of a stranger seen only during the offense are, thus, inapplicable.

Additionally, the eyewitness identification was like eyewitness testimony in any criminal case in that it could be attacked on cross-examination. Here, defense counsel rigorously cross-examined Williams regarding the identification, as counsel's theory of the case was that Williams was mistaken in his identification of Petitioner as the perpetrator.

Furthermore, this case is distinguishable from this Court's recent decision in *Ferensic v. Birkett*, 451 F.Supp.2d 874 (E.D. Mich. Aug. 25, 2006), *aff'd*, 501 F.3d 469 (6th Cir. 2007), wherein this Court granted habeas relief with respect to the issue of expert testimony regarding eyewitness identification. In *Ferensic*, the trial court granted defense counsel's pre-trial request for use of an expert witness regarding eyewitness identification. Thereafter, defense counsel hired an expert, who in turn examined the specific facts of the defendant's case and issued a report regarding the same. On the first day of trial, the prosecutor's motion to exclude the doctor from testifying—on the ground that his report was not provided to the prosecutor at least two months before trial, as ordered by the court—was granted by the trial court, and the doctor was not permitted to testify. *Id.* at 881. This Court found that the trial court's exclusion of the doctor as a defense witness deprived Petitioner of a fair trial.

9

In contrast to *Ferensic*—where an already-retained expert actually reviewed the facts of the specific case and formed some opinions and observations regarding the eyewitnesses' testimony—Petitioner does not present any opinions or statements from the type of expert he suggests would have led to a different result at trial. Moreover, whereas the victims in *Ferensic* had never previously observed their alleged assailant, the victim in the present case had seen Petitioner around the neighborhood on several occasions prior to the robbery. Here, Petitioner is required to show that his trial attorney was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (citations omitted). Petitioner fails to do so.

The record does not show any serious error or deficiency on the part of counsel. Nor has Petitioner overcome the presumption that counsel decided not to utilize an expert as a matter of trial strategy. Moreover, the record fails to establish any prejudice that resulted from counsel's decision, given Petitioner's failure to develop any evidentiary record or documentation establishing that, but for counsel's failure to present an expert at trial, Petitioner would have otherwise been victorious at trial. Accordingly, the Court concludes that the Court of Appeals' rejection of this issue was not objectively unreasonable. Petitioner is therefore not entitled to habeas relief regarding this claim.

### B. Sentencing-error claim

In his second habeas claim, Petitioner alleges that the trial court penalized him for exercising his right to trial where the sentence imposed by the court following his conviction by jury exceeded the sentence he would have received had he accepted the pre-trial plea offer. In addressing this claim, the Michigan Court of Appeals stated:

>       Defendant also argues that the trial court penalized him for exercising his right to trial because he had been offered a plea agreement that included a recommended minimum sentence of 3-1/2 years for the robbery conviction, but the court sentenced him to a minimum term of six years after trial.
>
>       We disagree with defendant's argument that the "only" possible reason for the increase in the minimum term of his sentence was his decision to exercise his right to trial. At the time the plea offer was made, there were discussions suggesting that the sentencing guidelines could be scored "as low as forty-two months." Ultimately, however, defendant's sentencing guidelines range was determined to be 51 to 85 months.
>
>       "Unless these is something in the record which indicates the higher sentence was imposed as a penalty for the accused's assertion of his right to trial by jury, the sentence imposed will be sustained." *People v Sickles*, 162 Mich App 344, 365; 412 NW2d 734 (1987); *see also People v Rivers*, 147 Mich App 56, 60-61; 382 NW2d 731 (1985). Because nothing in the record supports defendant's assertion that he was punished for exercising his right to trial, he is not entitled to resentencing.

*Wilson*, No. 261371, 2006 WL 1235228, at * 1-2.

A State's alleged failure to adhere to its own sentencing procedures does not present a Federal issue cognizable in a habeas proceeding. *Jones v. Estelle*, 622 F.2d 124, 126 (5th Cir.), *cert. denied*, 449 U.S. 996 (1980). Moreover, where a sentence is imposed within the State statutory limits—as is the case here—no Federal question is raised. *Wright v. Maryland*, 429 F.2d 1101, 1105 (4th Cir. 1970). And, even if Petitioner's claim were cognizable, the Court nevertheless finds that it is without merit.

Prior to trial, a negotiated settlement of the case was reached wherein Petitioner agreed to plead guilty to armed robbery and felony firearm in exchange for a sentence agreement of three and one half years for the robbery charge, which was the alleged lower-end of the guideline range. However, during the plea-taking procedure, Petitioner stopped the process and stated that he wished to have a trial. As a consequence, there was no agreement which conferred to

Petitioner the right to receive a minimum sentence of three and one half years, as he reneged on his promise to plead guilty.

Moreover, at sentencing, Petitioner failed to raise any challenges regarding this claim. Nor did he raise any challenges in any subsequent post-conviction motion.

Rather, Petitioner asserts that the trial court, in sentencing him to a minimum of six years rather than three and one half years, penalized him for failing to follow through with the plea agreement. Even if cognizable, Petitioner's argument is without merit because the mere imposition of a longer sentence than he would have received had he pleaded guilty, and had the court accepted his guilty plea, does not automatically constitute vindictive or retaliatory punishment. The United States Supreme Court has not expressly ruled whether the Constitution prohibits more severe sentences following a defendant's refusal to accept a plea bargain. However, lower federal courts have not required the trial court to preserve the sentence offered as part of a plea agreement. *See United States v. Frost*, 914 F.2d 756, 774 (6th Cir. 1990) (mere disparity in sentences is insufficient to show that the sentencing court penalized a defendant for going to trial).

Additionally, the United States Supreme Court's plea-bargaining decisions do make clear that States are free to encourage guilty pleas by offering substantial benefits to a defendant, or even by threatening an accused with more severe punishment should a negotiated plea be refused. *Corbett v. New Jersey*, 439 U.S. 212, 219, 223-24 (1978). And, it is equally the case that a defendant is free to accept or reject the bargain offered by the State. *Id.* However, once the bargain—whether it involved reduced charges, a recommended sentence, or some other

concession—is rejected, a defendant cannot complain that the denial of the rejected offer constitutes a punishment or that it is presumptive evidence of judicial vindictiveness. *Id.*

The inquiry, however, is not at an end yet because "it is improper for a [trial] judge to penalize a defendant for exercising his constitutional right to plead not guilty and go to trial, no matter how overwhelming the evidence of his guilt." *United States v. Derrick*, 519 F.2d 1, 3 (6th Cir. 1975). Petitioner argues that such a penalty was involved here, but the record fails to support his claim. Mere disparity in sentences is insufficient to show that the sentencing court penalized him for going to trial. Many factors may be considered in sentencing and nothing indicates that the trial court considered an improper factor such as Petitioner's exercise of his constitutional right to a trial. Petitioner has failed to offer evidence of actual vindictiveness.

Accordingly, even if Petitioner's sentencing claim were cognizable, it would nonetheless be without merit. The Court therefore concludes that the Court of Appeals' decision regarding this issue is not objectively unreasonable and Petitioner is not entitled to habeas relief on this claim.

### C. Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[3] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district

---

[3] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

      The Court concludes that jurists of reason would find its assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484-85. The Court thus issues Petitioner a COA. Petitioner is granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous. *See* Fed. R. App. P. 24(a).

## V.  CONCLUSION

      For the reasons stated above, this Court concludes that Petitioner Wilson is not entitled to federal-habeas relief on the claims presented in his petition.

      Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court issues Petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  January 20, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 20, 2010, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary